## Case No. 9,135.

### MARSHALL v. UNION INS. CO.

[2 Wash. C. C. 452.] [1]

Circuit Court, D. Pennsylvania. April Term, 1810.

MARINE INSURANCE—CONDEMNATION—EVIDENCE—PROCEEDINGS OF ADMIRALTY COURT—CLAIM TO PROPERTY—DUTY OF MASTER.

1. The whole record of the proceedings of the admiralty court in which the property insured was condemned, cannot be read in evidence, the sentence of the court not requiring the whole proceedings to explain them.

2. Cases in which the record may be referred to, in suits brought against the underwriters.

3. Unless under peculiar circumstances, no part of the record, other than the sentence, is evidence; and the party wishing to bring himself within the exceptions, must state the purpose for which he means to read other parts of the record, and confine himself to those parts.

[Cited in Azuria v. Insurance Co. of Pennsylvania, Case No. 691.]

4. It is the duty of the master to put in a claim to property against which proceedings are instituted; and his failing to do so, may possibly affect the claim of the insured, under certain circumstances.

[These were actions on four policies of insurance at the first hearing of which a verdict was rendered in the plaintiff's favor, Case No. 9,133.]

This cause, in which a new trial was granted at the last term [Case No. 9,134], now came on. The evidence was the same, with some additional circumstances, strongly pressed upon the jury by the defendants' counsel, to show that the additional cargo was Spanish property, covered by the plaintiff. No evidence was given to prove the materiality to the risk, of the non-disclosure of the purchase of that cargo, supposing it to have been bona fide. The defendants' counsel offered to read the whole of the record of the vice-admiralty court at Jamaica, condemning the vessel and cargo; but the court refused to let it be read, observing, that the sentence, being free from ambiguity, did not require any aid from other parts of the record, in order to explain the ground upon which it went; and of course, it was all that it was necessary or proper to read. The record might be referred to, for some purposes; such, for instance, as to show that no claim was put in; that the condemnation was probably produced by an untrue and fraudulent claim, or by other misconduct of the captain, to be collected from his answers to the standing interrogatories, and from the same source to impeach his evidence given in the trial here; and also to show what papers were found on board, as

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

acknowledged by the captain. But unless with these exceptions, or such as rest upon similar principles, the record, other than the sentence, is not evidence; and, to save time, the party wishing to bring himself within any of the exceptions, must state the purpose for which he means to read any other part of the record, and confine himself to that point. The court referred to former decisions here upon this question, and to the opinion of the supreme court, at the last term, in the case of Hodgson v. Marine Ins. Co. [5 Cranch (9 U. S.) 100]. The defendants produced in evidence the oath taken at the custom-house by Cazenove, in which he states, that the goods mentioned in the entry, which includes the four boxes imported by Cazenove, he had delivered to Marshall, and Marshall swears that he received them from Cazenove; whereas, the form of the oath prescribed by law, is, that the one sold, and the other purchased. This was urged as strong evidence, to show, that no real transfer of this property from De Lastre had been made. Many inaccuracies were pointed out in the custom-house proceedings, where Cazenove appeared as the importer of these goods, instead of agent to De Lastre; and the invoice of the outward cargo is dated the 4th of October, whereas the sale to the plaintiff is dated the 14th. A witness was examined, to prove that this was a mistake, and that the date of the invoice should have been the 15th. Evidence explanatory of the inaccuracies at the custom-house, was also given. Other circumstances were also relied upon by the defendants, to show that the transfer of these goods, originally belonging to De Lastre, was not real. It was also objected, that the captain put in no claim at Jamaica; which might have produced the condemnation, and for which the insured ought to be responsible. It was also objected that the condemnation was for illicit trade; and also, that the vessel and cargo were not sufficiently documented; and further, that one of the boxes containing books imported by De Lastre, was not pretended to be sold to the plaintiff, although it was acknowledged that it was not covered as the property of the plaintiff, though put on board by him.

WASHINGTON, Circuit Justice (charging jury). It is certainly the duty of the master, to put in a claim for his owners, and their claim upon the underwriters may possibly, under certain circumstances, be affected by a neglect of the master to do so. But in this case, the letters of the captain to his owners calling for duplicates of the papers, of which the first privateer that brought him to had deprived him, proves that it was his intention to file a claim; and his omission to do so may fairly be attributed to his death, which took place before the sentence. As to the charge of illicit trade, there is not the slightest evidence of it; the letter of Mr.

Lenox, the consul of the United States at Jamaica, stating this, not being to be regarded by the jury. As to the want of proper papers to prove the neutrality of the property, the charge is unsupported, and the contrary is sufficiently established.

The important point is, whether the goods imported by De Lastre, and mentioned in the bill of parcels from Cazenove to Marshall, were bona fide sold to the plaintiff? Cazenove swears that he purchased them from De Lastre, and sold them to Marshall, and received payment; and this is corroborated by the bill of parcels, with Cazenove's receipt for the money. In opposition to this, the defendants rely upon circumstantial evidence, which, if sufficiently strong to convince your minds that this was a fraudulent transaction, ought not to have the less weight because it is not positive and direct. The circumstances principally relied upon, are, the kind of goods—not such as could be intended for sale, but such as were suited to the condition of a man of fortune and high station; that they are the very goods brought in by him to New-York, and which were exported in the same vessel which was to convey him to Carthagena. Secondly. As a proof that Marshall acted as a mere agent, he charged 2½ per cent. commission at the foot of the invoice. Thirdly. The irregularities at the custom-house. Fourthly. Cazenove has produced no bill of parcels, receipt or other document whatever, showing that he purchased these goods from De Lastre. Lastly, and principally. The oaths taken at the custom-house by Cazenove and Marshall, in which they describe these goods as delivered by one, and received by the other, contrary to the prescribed form, which should have stated them as sold by Cazenove, and purchased by Marshall. It is for you to say, if these circumstances are sufficiently weighty to overpower the positive evidence in the cause. If this was in fact belligerent property, covered by Marshall, the owner of the vessel and cargo, this will avoid all the policies, upon the ground of concealment; because it exposed the whole to the hazard of confiscation, and most certainly to seizure, detention, and expense, affording to the insured an opportunity to throw the whole on the underwriters. If any of the articles put on board by Marshall were the property of De Lastre, and were not covered as belonging to the plaintiff, (which it was contended by the defendants' counsel was the case of the box of books,) this might also be material to the risk, by inducing seizure, a carrying in for examination and adjudication, though finally, a condemnation of more than the belligerent property could not have been justified. As to the materiality of this fact to the risk insured, you are to decide; and the court has only to inform you, that the concealment of a material fact avoids the policy.